UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRANDON MARCUS RESCH,

                Plaintiff,                      Case No. 2:21-cv-227

v.                                 Honorable Robert J. Jonker

DAVID RINK et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horton, Lovin, Snyder, Brunettea, Stavioa, and Weston. The Court will also dismiss, for failure to state a claim, the following claims: (1) all individual capacity claims against Defendant Washington; (2) all official capacity claims against Defendants Rink and Wellman; (3) all claims for declaratory or injunctive relief against Defendants Rink and Wellman; (4) all damages claims against Defendant

Washington; and (5) all damages claims or individual capacity claims under RLUIPA. The following claims remain in the case: (1) Plaintiff's First Amendment and Eighth Amendment damages claims against Defendants Wellman and Rink in their respective individual capacities; (2) Plaintiff's First Amendment and RLUIPA and Eighth Amendment claims for declaratory and injunctive relief against Defendant Washington in her official capacity.

<u>**Discussion**</u>

## I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues MDOC Director Heidi Washington as well as the following URF personnel: Warden Connie Horton, Food Service Director Unknown Lovin, Dietician Kelly M. Wellman, Chaplain David Rink, Corrections Officer Unknown Snyder, and Food Stewards Unknown Brunettea, Stavioa, and Weston.

Plaintiff alleges that he arrived at URF on March 22, 2019. (ECF No. 1, PageID.3.) Within a few days, he received official notice on his Offender Daily Schedule that he had been approved to receive a religious diet. (*Id.*) Plaintiff claims, however, that Defendant Rink did not approve him in advance to receive Kosher-for-Passover meals during Passover. (*Id.*) On April 20, 2019, the first day of Passover, Plaintiff "was given nothing beyond plain lettuce with an apple and unleavened bread for the lunch meal pass." (*Id.*)

On April 21, 2019, Plaintiff was again denied a Kosher-for-Passover meal for lunch. (*Id.*, PageID.4.) Plaintiff brought the issue to Defendant Weston's attention, and Defendant Weston responded, "We don't have a tray for you." (*Id.*) Later that day, Plaintiff was again denied a Kosher-for-Passover meal for dinner. (*Id.*) Plaintiff notified Defendant Brunettea, who told

Plaintiff that the "issue had been brought to [his] attention earlier." (*Id.*) Defendant Brunettea stated that there was nothing he could do because "nobody ordered Kosher-for-Passover trays for you, Resch." (*Id.*)

On April 22, 2019, Plaintiff showed Defendant Stavioa his Offender Daily Schedule reflecting his approval for a religious diet, and Defendant Stavioa responded, "Sorry. We don't have a meal for you." (*Id.*, PageID.3.) When Plaintiff stated that he had submitted two kites to Defendant Rink, Defendant Stavioa responded, "There's nothing I can do man." (*Id.*, PageID.4.) Plaintiff was not given a Kosher-for-Passover meal. (*Id.*)

On April 22, 2019, Plaintiff did not receive a Kosher-for-Passover meal for breakfast. (*Id.*) He informed the unknown female food steward of the issue, and Plaintiff was told that "no MDOC personnel had ordered a Kosher-for-Passover meal specifically for Plaintiff." (*Id.*) During lunch on that same day, Defendant Snyder brought Plaintiff a regular diet tray, and Plaintiff told Defendant Snyder that he required a Kosher-for-Passover meal. (*Id.*) Defendant Snyder responded, "Well I guess you don't eat then," and did not offer Plaintiff a religious diet tray or a Kosher-for-Passover tray. (*Id.*)

Plaintiff alleges further that during April, May, June, July, and August of 2019, he submitted numerous healthcare request forms, asking to be evaluated for an intolerance to soy and/or soy byproducts after experiencing abdominal pain and vomiting. (*Id.*, PageID.5.) Defendant Wellman, however, denied Plaintiff's requests and told Plaintiff to ask the chaplain about an alternate diet. (*Id.*) Plaintiff subsequently petitioned Defendant Rink for access to an alternative religious diet. (*Id.*) He repeatedly petitioned Defendant Rink for such and ultimately filed a grievance. (*Id.*)

On July 17, 2019, Defendant Rink interviewed Plaintiff regarding his grievance. (*Id.*) During the interview, Defendant Rink repeatedly asked Plaintiff to "sign off" on the grievance to indicate that it had been resolved. (*Id.*) Plaintiff refused to do so. (*Id.*) Defendant Rink then printed a three-question alternative religious diet test and directed Plaintiff to return it through institutional mail. (*Id.*) Plaintiff asked if he could take the test during the interview, but Defendant Rink "insisted that Plaintiff take same back to his assigned housing unit and submit such via the URF institutional mail system." (*Id.*, PageID.5–6.) Defendant Rink continuously informed Plaintiff, "You have to say you need an alternative religious diet due to 'sincerely held religious beliefs.'" (*Id.*, PageID.6.) Plaintiff returned to his housing unit, completed the test, and sent it to Defendant Rink via URF's institutional mail system. (*Id.*) He avers, however, that Defendant Rink never responded with the results of the test. (*Id.*)

Plaintiff alleges that he wrote letters to Defendant Horton on at least three occasions to request her "professional intervention [in Plaintiff's] soy intolerance/alternative religious diet matter, to no avail." (*Id.*) Defendant Horton also denied Plaintiff's grievances about the issue. (*Id.*) Plaintiff also submitted a request for a declaratory ruling and Step III grievances, all of which were denied by Defendant Washington. (*Id.*) On June 27, 2019, Plaintiff wrote to Defendant Lovin, requesting assistance in obtaining access to a therapeutic diet or, alternatively, an alternative religious diet. (*Id.*, PageID.6–7.) Plaintiff claims that Defendant Lovin did not respond to his letter and has not provided him either a therapeutic or alternative religious diet. (*Id.*, PageID.7.)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.* Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.7–8.)

4

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Free Exercise and RLUIPA Claims

Plaintiff contends that Defendants violated his rights under the First Amendment and RLUIPA by failing to provide Kosher-for-Passover meals and failing to provide an alternative religious menu to accommodate his soy intolerance. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

Plaintiff has sufficiently alleged his sincerely-held religious beliefs, and there is no doubt that the practice of following a Kosher diet is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious

belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch*, 627 F. App'x at 485 (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 20014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The Court's analysis of Plaintiff's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.*, § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims. *See Living Water*, 258 F. App'x at 733–34. Thus, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on

7

religious exercise). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

### 1.      Failure to Receive Kosher-for-Passover Meals

Pursuant to MDOC policy, "prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion." MDOC Policy Directive 05.03.150 ¶ WW (eff. Jan. 3, 2022). Thus, inmates who identify as Jewish, such as Plaintiff, are permitted to participate in Passover activities and receive Passover meals.

Here, Plaintiff avers that he was approved for a religious diet upon arrival at URF but did not receive Kosher-for-Passover meals on April 20, 21, and 22, 2019. (ECF No. 1, PageID.3–4.) Plaintiff's complaint, however, is devoid of allegations suggesting that he submitted a request to receive Kosher-for-Passover meals in 2019. Thus, while Plaintiff was denied Passover meals for three days in 2019, "such was the result of Plaintiff's inaction rather than conduct attributable" to Defendants Snyder, Brunettea, Stavioa, and Weston. *See Annabel v. Mich. Dep't of Corr.*, No. 1:18-cv-914, 2020 WL 11191724, at *5 (W.D. Mich. Nov. 6, 2020), *Report and Recommendation adopted*, 2021 WL 3721288 (W.D. Mich. Aug. 23, 2021). Even if such deprivation was attributable to Defendants Snyder, Brunettea, Stavioa, and Weston, the fact that Plaintiff was denied Passover meals for three days does not violate his First Amendment and RLUIPA rights. *See O'Connor v. Leach*, No. 1:18-cv-977, 2020 WL 2187814, at *2 (W.D. Mich. May 6, 2020) (collecting cases finding that temporary removal from Kosher meal programs does not constitute a substantial

burden under RLUIPA); *Berryman v. Granholm*, No. 06-CV-11010-DT, 2007 WL 2259334, at *3 (E.D. Mich. Aug. 3, 2007) (concluding that inmates who were temporarily removed from the Kosher meal plan could not maintain RLUIPA claims because the temporary removal did not substantially burden their practice of Judaism); *see also Lewis v. Zon*, 920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) ("It is well settled that periodic or temporary denial of religious meals does not constitute 'substantial' interference with free exercise, and is insufficient to establish a First Amendment claim."). Plaintiff's allegations that he did not receive Kosher-for-Passover meals for three days are insufficient to state claims for violations of his First Amendment and RLUIPA rights. The Court, therefore, will dismiss his First Amendment and RLUIPA claims against Defendants Snyder, Brunettea, Stavioa, and Weston.

### 2.      Soy Allergy/Intolerance

Plaintiff says that even though he now receives a diet that complies with his religious requirements, it does him no practical good because there is a too much soy in the diet and his body cannot tolerate soy.  According to plaintiff, this means he must choose one of the following three options: (1) abandon his religious diet practices; (2) endure gastrointestinal discomfort, including pain and vomiting; or (3) have less than adequate nutrition from his religious diet.[1] This is arguably the type of pressure that substantially burdens the free exercise of his religious practice. The theory is novel and, in this court's view, less tied to religious practice than to medical requirements and appropriate treatment or accommodation of those conditions, which is an Eighth Amendment issue.  Taken to its logical conclusion, plaintiff's religious practice theory here could put prison officials in the impossible position of preparing restaurant style, made-to-order plates

---

[1] There may well be other practical alternatives.  For example, he might be able to forego the soy options on the vegan menu and still enjoy adequate nutrition; however, his allegations, construed liberally and accepted as true at this screening stage, suggest that is not the case.

for each inmate.  Neither the First Amendment, RLUIPA, the Eighth Amendment or any other theory of which this Court is aware requires that.

        To the contrary, in *Robinson v. Jackson*, 615 Fed. Appx. 310 (6th Cir. 2015), the Court of Appeals affirmed judgment on the pleadings against a prisoner asserting First Amendment, RLUIPA and Equal Protection claims based on an analogous fact pattern.  Plaintiff in *Robinson* was a Muslim who required Halal meals.  Prison official complied by offering plaintiff Halal vegetarian preparations.  Plaintiff said that was insufficient because he needed Halal meat products too.  The Sixth Circuit rejected the theory:

> Prisoners have a constitutional right to meals that meet their nutritional needs; indeed, they have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs. *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir. 2010). But there is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison.  *See Spies v. Voiovich,* 173 F.3d 398, 406–07 (6th Cir.1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").

*Robinson*, 615 Fed. Appx. at 314.

        By the similar logic, this Court is inclined to believe that plaintiff's First Amendment and RLUIPA theories will ultimately come up short because even plaintiff acknowledges that prison officials are providing him a religiously compliant meal, just as officials did in *Robinson*.  To the extent plaintiff's problem with the religiously compliant diet he receives is based on food allergies, and not simply preference, he may have stated an Eighth Amendment claim.  But it's difficult for the Court to see a First Amendment or RLUIPA issue.

        That said, this is only a screening decision, and at least one other District Court has found a basis for permitting a claim like this to proceed.  *See Anderson v. Larry*, 2021 WL 5957420 (N.D. Ill. Dec. 16, 2021).  Moreover, potential confusion between religious diets and therapeutic diets are woven into plaintiff's allegations.  The issue may well benefit from further development

post-screening.  So for present purposes only, the Court will assume, without deciding, that plaintiff's allegations present First Amendment and RLUIPA theories that should survive screening, but only against some defendants and only for some specific relief, as further articulated below.   Accordingly, with respect to his intolerance for soy, Plaintiff has stated claims for violations of his First Amendment free exercise and RLUIPA rights.

Plaintiff attributes the constitutional violations he has suffered with respect to the failure to accommodate his soy intolerance to Defendants Wellman, Rink, Horton, Washington, and Lovin. However, Plaintiff's factual allegations clarify that not every one of those Defendants played an active role in the alleged violation of his religious rights. Moreover, differences between the remedies available under § 1983 and RLUIPA impact whether Plaintiff may pursue relief against the potentially liable Defendants in their personal capacities, their official capacities, or both.

### a. Free Exercise Defendants

"[A] plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court, therefore, must consider who is responsible for the content of the Kosher menu.

General requirements for MDOC's food service are set forth in MDOC Policy Directive 04.07.100 (eff. Oct. 1, 2019).[2] Such requirements include three meals a day, with hot food provided for two of those meals. *Id.*, ¶ G. All menus and meals must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council, and menu planning must follow "The Dietary Guidelines for Americans." *Id.*, ¶ H. The

---

[2] Plaintiff references certain MDOC policy directives and the policies regarding religious and therapeutic diets in his complaint.

Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC facilities. *Id.*, ¶ J. Food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101 (eff. Sept. 1, 2018), and religious diets, as set forth in MDOC Policy Directive 05.03.150 (eff. Jan. 3, 2022).

The religious diet menu consists of a vegan menu, which includes soy. The policy provides: "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary need of the prisoner." *Id.*, ¶ OO. The religious diet policy does not provide for changes to the religious diet menu other than changes necessary because the vegan menu does not meet the *religious* requirements of the prisoner.

The only other possible alternative diet referenced is the therapeutic diet. Regarding such diets, the policy directive provides:

> The Administrator of the Bureau of Health Care Services (BHCS) or designee shall maintain a Diet Manual identifying criteria for prescribing and providing therapeutic diets, specific to the MDOC needs. The MDOC diet manual is researched and written by the BHCS Registered Dietitians. This manual provides a guideline for circumstances under which therapeutic diets are to be ordered and medical nutritional services are to be provided.

> To comply with existing standards of health care, all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual. The menus for therapeutic diets will be written by BHCS Registered Dietitians in accordance with the MDOC Diet Manual. Therapeutic diet orders will be reviewed by BHCS Registered Dietitians to ensure appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual. All therapeutic diets will be served as prescribed in the Prisoner Health Record (PHR) by the MP or dentist and in accordance with the MDOC Diet Manual and PD 04.07.100 "Offender Meals and Food Quality Assurance."

\* \* \*

> Menu options such as vegetarian, pork-free or other dietary variances that are requested for religious or personal (non-medical) reasons are not therapeutic diets and should not be ordered as such.

MDOC Policy Directive 04.07.101, ¶¶ G, H, M. (eff. Sept. 1, 2018). The policy directive makes clear that the preparation and service of the food is the responsibility "of Food Service within each institution" but the food is to be "prepared and served according to the therapeutic diet menus as written by [Bureau of Health Care Services] Registered Dieticians." *Id*., ¶¶ P, Q. Based upon the above policy directives, and the absence of any allegations in Plaintiff's complaint to the contrary, there are no facts alleged that support an inference that Defendants Horton and Lovin played an active role in requiring soy in the vegan diet in the first instance or refusing to change Plaintiff's diet to exclude soy.

Moreover, government officials may not be held liable for the unconstitutional conduct or their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton and Lovin participated in active unconstitutional behavior with regard to his free exercise rights. Rather, Plaintiff avers that Defendant Horton

denied his grievances and that Defendant Lovin refused to respond to his letter. Such is not sufficient to state a claim against them. Accordingly, Plaintiff has failed to state a claim for violation of his First Amendment free exercise rights against Defendants Horton and Lovin.

Similarly, there is nothing in the policy directives or Plaintiff's factual allegations that support the inference that Defendant Washington played any role in creating the religious diet vegan menu that depends upon soy, or that she played any role in the failure to switch Plaintiff to either a therapeutic diet or alternative religious diet. With respect to Defendant Washington, Plaintiff merely alleges that she denied his Step III grievances and refused to respond to his request for declaratory relief. (ECF No. 1, PageID.6.) Plaintiff, therefore, has failed to allege that Defendant Washington participated in active unconstitutional behavior with regard to his claimed First Amendment free exercise violation. Nevertheless, as discussed *infra*, Defendant Washington is the only named Defendant from which Plaintiff may seek prospective declaratory and injunctive relief. Accordingly, because Plaintiff has set forth a plausible First Amendment free exercise claim, the Court will allow him to proceed against Defendant Washington at this time.

According to Plaintiff's allegations, the remaining Defendants—Defendants Wellman and Rink—played some role in either the creation of the religious vegan diet or the denial of a deviation from it to accommodate Plaintiff's soy intolerance. Subject to the reservations noted above, the Court will permit First Amendment free exercise claims against Defendants Wellman and Rink to proceed past screening.

Plaintiff sues Defendants Wellman, Rink, and Washington in their personal and official capacities. (*Id.*, PageID.1.) As noted above, he seeks damages as well as declaratory and injunctive relief. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). The Court, therefore, will dismiss Plaintiff's suit for monetary relief against Defendants Wellman, Rink, and Washington in their respective official capacities.

Moreover, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Plaintiff, however, is no longer confined at URF, where he avers Defendants Wellman and Rink are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now incarcerated at DRF, and Defendants Wellman and Rink are not employed at that facility. Plaintiff, therefore, cannot maintain his free exercise claims for declaratory and injunctive relief against Defendants Wellman and Rink in their official or their individual capacities.[3] As noted above, his First Amendment free exercise claim for declaratory and injunctive relief against Defendant Washington in her official capacity may proceed.

---

[3] It necessarily follows that Plaintiff cannot obtain declaratory or injunctive relief against Defendants Wellman or Rink for violations of Plaintiff's Eighth Amendment rights as well.

b.     **RLUIPA Defendants**

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011)[4]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[5] Therefore, Plaintiff's RLUIPA claims for damages, declaratory, or injunctive relief against Defendants Rink, Wellman, Horton, Washington, and Lovin in their individual capacities will be dismissed.

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities either. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 U.S. at 71 (1989); *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief

---

[4] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[5] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id.* at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Sovereign immunity, however, does not bar a suit seeking declaratory or injunctive relief against Defendants in their official capacities. *See Ex Parte Young*, 209 U.S. at 159–60. That exception, however, applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985). Plaintiff seeks declaratory or injunctive relief that is prospective. As discussed above, however, Plaintiff is no longer confined at URF, where Defendants Rink, Wellman, Horton, and Lovin are employed. Plaintiff, therefore, cannot maintain his RLUIPA claims for declaratory and injunctive relief against Defendants Rink, Wellman, Horton, and Lovin in their official capacities. His claims for declaratory and injunctive relief under RLUIPA against Defendant Washington in her official capacity, however, may proceed.

### B.     Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"[I]t is clearly established that the prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation. *See Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). Here, Plaintiff asserts two Eighth Amendment claims: (1) an Eighth

Amendment claim against Defendants Snyder, Brunettea, Stavioa, and Weston for denying him meals during Passover; and (2) an Eighth Amendment claim against Defendants Rink, Wellman, Horton, Washington, and Lovin for failing to accommodate his soy intolerance by changing his diet.

### 1.    Denial of Passover Meals

Plaintiff contends that Defendants Snyder, Brunettea, Stavioa, and Weston violated his Eighth Amendment rights by denying him meals altogether during Passover. As noted above, Plaintiff contends that he did not receive Kosher-for-Passover meals on April 20, 21, and 22, 2019. (ECF No. 1, PageID.3–4.) With respect to Defendants Brunettea, Stavioa, and Weston, however, Plaintiff's complaint is devoid of allegations that would permit an inference that they deliberately denied Plaintiff meals. Rather, Plaintiff indicates that they informed him that they did not have Kosher-for-Passover trays available for him. Nothing in the complaint leads to the inference that Defendants Brunettea, Stavioa, and Weston failed to offer any sort of meal to Plaintiff. Given the lack of such allegations, Plaintiff has failed to set forth a plausible Eighth Amendment claim against Defendants Brunettea, Stavioa, and Weston.

With regard to Defendant Snyder, Plaintiff alleges that on April 22, 2019, Defendant Snyder brought him a regular diet tray for lunch. (*Id.*, PageID.4.) Plaintiff told Defendant Snyder that he required a Kosher-for-Passover meal. (*Id.*) Defendant Snyder responded, "Well I guess you don't eat then." (*Id.*) Plaintiff alleges that Defendant Snyder never offered him a religious diet tray or a Kosher-for-Passover tray. (*Id.*) While the Court does not condone Defendant Snyder's comment, the denial of one meal by Defendant Snyder does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven

19

meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that he missed one meal tray falls short of stating a claim under the objective prong of the deliberate indifference standard. Consequently, Plaintiff does not state a plausible Eighth Amendment claim against Defendant Snyder. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

### 2.    Soy Intolerance

Plaintiff also contends that Defendants Rink, Wellman, Horton, Lovin, and Washington violated his Eighth Amendment rights by refusing to accommodate his soy intolerance by placing him on a therapeutic diet or an alternative religious diet. In his complaint, Plaintiff avers that Defendant Wellman ignored his numerous requests for testing and a therapeutic diet and instead referred him to Defendant Rink for consideration of an alternative religious diet. Defendant Rink, however, refused to process Plaintiff's request for such a diet. Plaintiff contends that Defendants Wellman and Rink were aware that the current religious diet, containing soy, caused Plaintiff gastrointestinal distress and yet failed to change his diet to accommodate him, thereby causing him to continue experiencing distress if he continued to follow his religious beliefs. Plaintiff, therefore,

has set forth plausible Eighth Amendment claims against Defendants Wellman and Rink. As discussed above, however, he cannot maintain his claims for damages, declaratory, and injunctive relief against Defendants Wellman and Rink in their official capacities. While such claims will be dismissed, Plaintiff will be permitted to proceed on his Eighth Amendment claims for monetary damages against Defendants Wellman and Rink in their respective individual capacities.

As discussed *supra* with respect to Plaintiff's First Amendment and RLUIPA claims, Plaintiff fails to allege that Defendants Horton, Lovin, and Washington engaged in any active unconstitutional behavior regarding the failure to accommodate his soy intolerance by changing his diet. Plaintiff alleges that Defendant Horton denied his grievances, Defendant Lovin did not respond to a letter, and Defendant Washington denied his Step III grievances and failed to respond to a request for declaratory relief. Such is not enough to allow the Court to plausibly infer that Defendants Horton, Lovin, and Washington were deliberately indifferent to Plaintiff's needs. Plaintiff, however, seeks injunctive relief in the provision of either a therapeutic diet or an alternative religious diet. (ECF No. 1, PageID.8.) As discussed above, Defendant Washington is the only Defendant from whom Plaintiff can seek declaratory and injunctive relief in this matter. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Horton and Lovin, but permit him to proceed on his Eighth Amendment claim for declaratory and injunctive relief against Defendant Washington in her official capacity at this time.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Horton, Lovin, Snyder, Brunettea, Stavioa, and Weston will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims: (1) all individual capacity claims against Defendant Washington; (2) all official capacity claims against Defendants Rink and Wellman; (3) all claims for declaratory or injunctive relief against Defendants Rink and Wellman; (4) all damages claims against Defendant Washington; and (5) all damages claims or individual capacity claims under RLUIPA.

The following claims remain in the case: (1) Plaintiff's First Amendment and Eighth Amendment damages claims against Defendants Wellman and Rink in their respective individual capacities; (2) Plaintiff's First Amendment and RLUIPA and Eighth Amendment claims for declaratory and injunctive relief against Defendant Washington in her official capacity.

An order consistent with this opinion will be entered.


Dated:   __March 16, 2022__          /s/ Robert J. Jonker_____
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE