UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRANDON MARCUS RESCH #304507,

        Plaintiff,

v.

DAVID RINK, et al.,

        Defendants.
_____/

Case No. 2:21-cv-00227

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment Michigan filed by Department of Corrections (MDOC) Director Washington and Dietician Wellman. These Defendants assert that Plaintiff failed to exhaust his administrative remedies. (ECF No. 24.)

State Prisoner Brandon Marcus Resch filed a verified complaint asserting that he was denied meals based upon his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc-1, and under the Eighth Amendment. (ECF No. 1, PageID.9.) Resch says that he was denied Kosher meals for Passover, and he was not being provided soy free meals at the Chippewa Correctional Facility (URF). (*Id.*, PageID.4.) Resch is currently confined in the G. Robert Cotton Correctional Facility. (ECF No. 20.)

On March 16, 2022, the Court issued an Opinion and Order dismissing (1) Resch's claims against Defendants Horton, Lovin, Snyder, Brunettea, Stavioa, and Weston with prejudice; (2) Resch's individual capacity and damage claims against Director Washington; (3) Resch's official capacity claims and requests for declaratory and injunctive relief against Chaplain Rink and Dietician Wellman; and (4) all damage claims under RLUIPA.  (ECF Nos. 7 and 8.)

The remaining claims are against three Defendants for failing to provide Plaintiff with an alternative religious meal that is free of soy and/or soy byproducts. Resch says that he has an intolerance to soy.  (*Id.*, PageID.7.)  Specifically, Resch's remaining claims include his (1) First Amendment and Eighth Amendment claims, seeking damages, against Defendants Dietician Wellman and Chaplain Rink in their individual capacities, and (2) his First Amendment, RLUIPA, and Eighth Amendment claims against Defendant Director Washington for declaratory and injunctive relief in her official capacity.  (ECF No. 7, PageID.94.)  Only Defendants Director Washington and Dietician Wellman move for summary judgment by arguing that Resch failed to exhaust his administrative remedies against them.

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment.  Resch's assertion that he filed grievances exhausting his claims against Director Washington and Dietician Wellman is blatantly contradicted by the record.  Resch failed to properly exhaust his claims against either Defendant by naming them in a Step I grievance that he exhausted through Step III of the grievance process.  Further, although Resch argues that he

submitted unprocessed grievances at Step I, he failed to show that he took affirmative steps to appeal those grievance through the grievance process as required by MDOC policy.

It is respectfully recommended that the Court dismiss Defendants Director Washington and Dietician Wellman without prejudice.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner

may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate

5

notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

Defendants argue that Resch filed five grievances through Step III of the grievance process that may be relevant to this case. (ECF No. 25, PageID.174.) Resch filed a response indicating that in one of those grievances – URF -19-07-1854-20e – he exhausted his claims against Director Washington and Dietician Wellman. Resch also argues that he submitted two Step I grievances that exhausted his claims against Director Washington and Dietician Wellman, but the Step I grievances were never

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

processed and he never received a response. (ECF No. 27-9, PageID.297; ECF No. 27-10, PageID.299.)

### 1. URF-19-07-1854-20e

Resch argues that he exhausted his claims against Director Washington and Dietician Wellman in grievance URF-19-07-1854-20e. At Step I of this grievance, Resch wrote the following:

> **Name (print first, last):** Brandon M. Resch
> **Number:** 304507
> **Institution:** URF
> **Lock Number:** M-341
> **Date of Incident:** April of 2019 through Present
> **Today's Date:** 02 JULY 2019
>
> **What attempt did you make to resolve this issue prior to writing this grievance? On what date?** See below:
> **If none, explain why.** Kited medical on April 14th, 18th, 21st; May 02nd, 18th; and June 03rd, 11th, 22nd of 2019; Wrote Warden Connie Horton on June 11, 2019; Wrote Chaplain Rink on June 11, 2019; and wrote Food Service Director, Mr. Lovin, requesting an alternative religious diet due to the below reason, all to no avail.
>
> **State problem clearly.** Grievant has petitioned all of the above-listed Departmental employees, as well as Corizon Medical staff, for an alternative religious diet, pursuant to Policy Directive 05.03.150, paragraph "OO." To date Grievant has been denied an alternative religious diet and has been forced to eat in contrast of his sincerely held religious beliefs, i.e., the "regular diet" meals.
>
> **REDRESS SOUGHT:** An alternative religious diet that I am able to eat without the physical symptoms caused by soy and/or soy byproducts; compensation for the deliberate indifference to right to eat and practice my religion in conformity with my sincerely held religious beliefs at $18.00 per day ($6.00 per meal) for each and every day since April 14th, 2019 that Grievant has been forced to eat meals that violate his religious beliefs.

(ECF No. 25-3, PageID.224.)

As shown, Resch did not name Director Washington or Dietician Wellman in his Step I grievance. The grievance was denied at Step I. In his Step II appeal, Resch named Director Washington for the first time, and indicated that he had placed her

9

on notice of the alleged denial to allow him to eat a religious meal. The Step II appeal states in part:



(*Id.*, PageID.222.) Resch's Step II and III appeals were denied. (*Id.*, PageID.221, 223.)

MDOC P.D. 03.02.130 provides that: "Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance *through all three steps of the grievance process* in compliance with this policy." Accordingly, when grievable issues arise, a prisoner must file a Step I grievance; the prisoner does not exhaust his claims by asserting new allegations of wrongdoing in an appeal to a pre-existing grievance. *See Burton v. Jones*, 321 F.3d 569, 574 ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). This does not

mean that a prisoner may not add additional clarifying facts or name for the first time an unnamed Defendant at Step II of the grievance process. For example, where the plaintiff presents facts in his Step I grievance that could place the prison on notice "to conduct an investigation even though the grievance did not necessarily identify the particular individuals who might later be sued," adding those individuals at Step II may be sufficient to exhaust the claims against them. *Gardiner v. Corizon Health, Inc.*, No. 2:21-cv-167, at 4 (W.D. Mich. Feb. 7, 2023) (ECF No. 64 (Order Adopting In Part Report And Recommendation).)

Resch failed to grieve his claims against Director Washington in his Step I grievance or provide any facts indicating that she was involved in the alleged denial of a soy free religious meal, and by doing so, he failed to place the MDOC on notice that his grievance was against Director Washington. By adding her name for the first time at Step II, Resch failed to properly exhaust his claims against Director Washington. *Mays v. Skytta*, 2021 WL 1536024, No. 2:19-cv-217, *6-9 (W.D. Mich. Mar. 16, 2021) *Report and Recommendation*, 2021 WL 1534692 (April 19, 2021) *Order Adopting Report and Recommendation*. In the opinion of the undersigned, Director Washington is entitled to dismissal without prejudice due to Resch's failure to properly exhaust his grievance remedies.

**2. Other Step I Grievances**

Finally, Resch argues that he submitted two Step I grievances that were never processed by the MDOC. Resch attached these Step I grievances to his response brief. (ECF Nos. 26, 27.) The first of the two is shown below.

> **Name (print first, last):** Brandon Resch
> **Number:** 304507
> **Institution:** URF
> **Lock Number:** M-341
> **Date of Incident:** April 14, 2019 through May 2nd
> **Today's Date:** May 02, 2019
>
> **What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why.** Kited medical on: April 14, 2019; April 18, 2019; April 21, 2019; and again on today's date, to no avail.
>
> **State problem clearly.** ... Grievant has repeatedly petitioned Health Care via the CHJ-549 Departmental form to be evaluated for his intolerance to soy and/or soy byproducts to no avail. Grievant's petitions have gone ignored in stark contrast to Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed 251, as Grievant's right to eat a nutritional meal in conformity with his religious beliefs has been wholely ignored.
> **REDRESS SOUGHT:** An alternative to soy and/or soy byproducts through a medical detail or alternative.
>
> *Grievant's Signature*

(ECF No. 27-9, PageID.297.)

In this alleged Step I grievance, which is dated May 2, 2019, Resch failed to name any Defendant.

In the second of the two Step I grievances, which is shown below and is dated June 25, 2019, Resch named Dietician Wellman, but only to the extent that he says that he was being denied access to her.

12

> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Brandon M. Resch | 304507 | URF | H-341 | 22 JUNE 2019 | 25 JUNE 2019 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 22 JUNE 2019
> If none, explain why.
>
> Re-kited medical and requested evaluation of intolerance to soy and/or soy byproducts, to no avail.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> Grievant is being denied access to the dietician, Kelly M. Wellman, M.D., to obtain an alternative to the soy and/or soy byproducts that Grievant is intolerant to.
>
> REDRESS SOUGHT: Access to dietician or medical staff able to evaluate said intolerance.
>
> Grievant's Signature

(ECF No. 27-10, PageID.299.)

It is undisputed that, Resch did not proceed beyond Step I by appealing to Step II. Resch, however, argues that because the MDOC did not process his Step I grievances he exhausted claims asserted in these grievances. Resch's argument is insufficient to survive summary judgment for several reasons. First, Resch has simply provided the Court with copies of Step I grievances that he says he submitted. But that is not proof that the copies were submitted. *Alexander v. Calzetta*, 2019 WL 1011106, at *5 (E.D. Mich. March 4, 2019) (goldenrod copy without a grievance number or indication that it was received at Step I "is not proof that it was submitted.").

13

Second, the evidence before the Court shows that the prison Grievance Coordinator (GC), Michael McLean, was required to log each grievance he received and assign a grievance number to each one. His records show that Resch did not submit these grievances. GC McLean attested that he has no discretion regarding whether or not to place a grievance number on a Step I grievance that he receives or to provide a Step II grievance form. (ECF No. 35-2, PageID.345 (affidavit of McLean).) GS McLean also attested that he logs every grievance that he receives in the database and every form he provides to a prisoner. (*Id.*) Finally, McLean attested that Resch submitted five grievances to his office between May and July of 2019. Those grievances are reflected in the Prisoner Grievance Summary, which is shown below.

## Prisoner Grievance Summary

| Step I Responder | Grievance Number | Prisoner | | | | Date Due Back to GC | Extension Date | Days Overdue |
|---|---|---|---|---|---|---|---|---|
| Chaplain East | 1854 | Religioin | 304507 | RESCH BR | Q 7 | 07/17/19 | 08/14/19 | 1254 |
| F.S. East | 1150 | Food | 304507 | RESCH BR | Q 7 | 05/08/19 | | 1324 |
| F.S. East | 1151 | Religioin | 304507 | RESCH BR | Q 7 | 05/08/19 | | 1324 |
| F.S. West | 1118 | Religioin | 304507 | RESCH BR | Q 7 | 05/06/19 | | 1326 |
| Grievance Coordinat | 1153 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 05/08/19 | | 1324 |
| Grievance Coordinat | 1115 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 05/06/19 | | 1326 |
| Grievance Coordinat | 1095 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 05/03/19 | | 1329 |
| Grievance Coordinat | 1152 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 05/08/19 | | 1324 |
| Grievance Coordinat | 2358 | Nongrievable | 304507 | RESCH BR | Q 7 | 09/11/19 | | 1198 |
| Grievance Coordinat | 1524 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 06/12/19 | | 1289 |
| Grievance Coordinat | 1709 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 07/02/19 | | 1269 |
| Grievance Coordinat | 2134 | Grievance Rejections | 304507 | RESCH BR | Q 7 | 08/19/19 | | 1221 |
| Grievance Coordinat | 2835 | Grievance Rejections | 304507 | RESCH | | DRF | 11/08/19 | | 1140 |
| H.S. East | 1149 | Health Care | 304507 | RESCH BR | Q 7 | 05/08/19 | | 1324 |
| Library | 1437 | Library | 304507 | RESCH BR | Q 7 | 06/05/19 | 07/03/19 | 1296 |
| Prisoner Store | 1117 | Accounting | 304507 | RESCH BR | Q 7 | 05/06/19 | | 1326 |
| QMHP West | 2135 | Health Care | 304507 | RESCH BR | Q 7 | 08/19/19 | | 1221 |
| RUM Batho | 1287 | Conditions | 304507 | RESCH BR | Q 7 | 05/21/19 | | 1311 |
| RUM Thompson | 1116 | Personnel | 304507 | RESCH BR | Q 7 | 05/06/19 | | 1326 |

(ECF No. 35-2, PageID.348.)

Resch says that on June 29, 2019, he wrote a letter to the Grievance Coordinator asking for Step I grievance receipts for the two grievances he allegedly submitted on May 2 and June 25, 2019. (ECF No. 27, PageID.257.) Resch says that he received the following response:

## MICHIGAN DEPARTMENT OF CORRECTIONS

"Committed to Protect, Dedicated to Success"

## MEMORANDUM

DATE: 7/1/19

TO: 304507 Resch (M-341)

FROM: M. McLean, URF Grievance Coordinator

SUBJECT: Step II Grievance

Send all inquires regarding Step II grievances to the Warden's Office.

(ECF No. 27-11, PageID.301.) However, nothing in this memorandum indicates that it was made in response to a request for receipts for Step I grievances. Thus, this letter from McLean does not establish that Resch in fact filed the two Step I grievances.

Moreover, Resch was required to take some further action to exhaust his administrative remedies. *Napier v. Laurel Cnty.,* 636 F.3d 218, 223-224 (6th Cir. 2011) ("The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." (quoting *Braswell v. Corr. Corp. of Am.*, No. 08–0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009))). Resch has not shown that he took further action by attempting to appeal these grievances to the next step. Policy Directive 03.02.130, Paragraph U provides that a grievant may "pursue a grievance that has not been responded to by staff within the required time frames, including any extensions granted, the grievant may forward the grievance to the next step of

16

the grievance process within ten business days after the response deadline expired . . . ." (ECF No. 25-2, PageID.189-90.) Resch has not shown that he complied with this policy directive by forwarding the alleged Step I grievances to the next step of the grievance process within the required time.

Finally, and perhaps most importantly, the Step I grievances dated May 2 and June 25, 2019, as shown above, fail to raise the claims asserted in this lawsuit against Director Washington or Dietician Wellman. Resch asserted in these grievances that he was denied an evaluation by health care to determine whether he needs an alternative meal and that he was denied access to Dietician Wellman. Resch does not indicate that Director Washington or Dietician Wellman denied him a religious or nutritional diet that was free from soy in these unprocessed Step I grievances. Thus, these alleged grievances would have been insufficient to exhaust Resch's claims if he had pursued them through Step III of the grievance process.

The undersigned concludes that Resch's version of the facts related to exhaustion – that he submitted unprocessed Step I grievances – is blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."). In addition, the undersigned concludes that Resch has not presented any evidence that he attempted to appeal these grievances to the next step of the process.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant Washington and Wellman's motion for summary judgment and dismiss them from this action without prejudice.

If the Court accepts this recommendation Resch's First Amendment and Eighth Amendment damage claims against Chaplain Rink in his individual capacity remain.

Dated: March 17, 2023                           /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).